**Not for Publication**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **BRIDGET A. MONROE,** | |
| **Plaintiff,** | **Civil Action No. 21-20231 (ES) (MAH)** |
| **v.** | **ORDER** |
| **KENNETH W. SIECZKOWSKI,** | |
| **Defendant.** | |

**SALAS, DISTRICT JUDGE**

Before the Court is Kenneth W. Sieczkowski's ("Defendant") motion to dismiss, (D.E. No. 52 ("Mot."); D.E. No. 5-1 ("Mov. Br.")), Bridget A. Monroe's ("Plaintiff") amended complaint, (D.E. No. 47 ("Am. Compl.")). The Court resolves Defendant's motion without oral argument. *See* Fed. R. Civ. P. 78(b); L. Civ. R. 78.1(b). For the reasons set forth below, that motion is **DENIED.**

## I.    BACKGROUND

### A.    Factual Allegations

Plaintiff alleges that Defendant sexually assaulted her on July 19, 1988, when she was sixteen years-old and Defendant was an adult. (Am. Compl. ¶¶ 4–5). Following the assault, Plaintiff "pursued criminal charges." (*Id.* ¶ 7). On September 16, 1991, "Defendant pled guilty in the Superior Court of New Jersey to lesser charges arising out of the sexual assault." (*Id.* ¶ 8). Plaintiff alleges that, by way of a letter dated September 25, 1991, the Middlesex County Prosecutor's Office confirmed the plea and advised her that "Defendant would be sentenced to

probation and that no trial would occur." (*Id*. ¶ 9).  Plaintiff's aunt attended the sentencing. (*Id*. ¶ 10).

While the state prosecuted Defendant criminally, "Plaintiff also filed a civil action in the Superior Court of New Jersey in 1991, arising out of the same assault." (*Id*. ¶ 11).  That year, Plaintiff underwent "intensive psychiatric treatment at the Austen Riggs Center in Massachusetts[,]" where she was admitted for long-term residential care.  (*Id*. ¶¶ 19–20). Psychotherapy notes from that institution reveal that Plaintiff suffered from "depression, anxiety, suicidal ideation, dissociation, and inability to cope with the stress of litigation." (*Id*. ¶ 21). Because of her psychiatric condition, Plaintiff ultimately "deci[ded] to dismiss" her civil case. (*Id*.).  Plaintiff alleges that her family members state that she "dropped the case . . . only because it was too painful and overwhelming for her to continue, and never because of any settlement or resolution." (*Id*. ¶ 23).  Plaintiff further alleges that psychotherapy notes from her treatment at the Austen Riggs Center "confirm that her decision to dismiss was driven entirely by her psychiatric condition, not because of nay adjudication or settlement." (*Id*. ¶ 22).  Her "inability to pursue the case deeply affected Plaintiff's mental health, and . . . in 1996[,] she attempted suicide by overdosing on [her then-husband's] prescription medication." (*Id*.).

The docket for that prior civil matter "reflects that the case was marked 'settled – not scheduled for trial' on July 6, 1993." (*Id*. ¶ 12).  Plaintiff, however, alleges that "[n]o settlement agreement, stipulation of dismissal with prejudice, release, or judgment has ever been produced by Defendant or located in any court records." (*Id*. ¶ 13).  Plaintiff further claims that she "never received any settlement or compensation from Defendant or anyone else in connection with the 1991 action." (*Id*. ¶ 15).  Indeed, she "remained dependent on student aid and family support" while a student at Smith College.  (*Id*. ¶ 16).  She maintains that she voluntarily dismissed the

matter "solely because of her mental health." (*Id*. ¶ 23). Plaintiff alleges that "[n]o discovery was completed, no dispositive motions were decided, and no trial occurred." (*Id*. ¶ 25). Indeed, in 1996, after Plaintiff's mental health stabilized, she contacted her prior attorney to resume the civil action. (*Id*. ¶ 28). That attorney, however, informed her that the statute of limitations had expired. (*Id*. ¶ 28).

"In 2019, the New Jersey Legislature enacted the Child Victims Act ('NJCVA'), which revived for a two-year window previously time-barred claims of child sexual abuse" and provided Plaintiff with a potential avenue to revive her previously time-barred case. (*Id*. ¶ 29).[1] In 2021, Plaintiff spoke to Middlesex County Civil Division Manager Ian Ratzlaff, who told her that "the case file [from her 1991 civil case] had been destroyed 'because the case did not end in a judgment.'" (*Id*. ¶ 14). She has also spoken with the law firm that represented her in 1991 "and was told . . . that no case records remain in their possession." (*Id*. ¶ 28).

### B.  Procedural History

On November 29, 2021, Plaintiff filed this action against Defendant. (D.E. No. 1).[2] Defendant then filed a motion to dismiss and a "motion for sanctions" on November 26, 2024. (D.E. Nos. 31 & 32). This Court issued an order to show cause, requiring Plaintiff to "show cause

---

[1]      The NJCVA "provided a two-year revival window for victims to file otherwise time-barred claims for sexual crimes committed against them while minors. This statute of limitations expanded the time for filing claims for 'certain sexual crimes,' permitting minor victims to file claims 'within [thirty-seven] years after the minor reaches the age of majority, or within seven years from the date of reasonable discovery of the injury ... whichever date is later.' The statute[] similarly permits actions arising from sexual crimes committed against minors, including: 'sexual assault, any other crime of a sexual nature, a prohibited sexual act ..., or sexual abuse as defined in [the Child Sexual Abuse Act (or "CSAA")].' 'The CVA also supplemented the CSAA discovery period provision, providing that it is subject to N.J.S.A. 2A:14-2(a).'" *C.P. v. Governing Body of Jehovah's Witnesses*, 304 A.3d 695, 698 (N.J. Super. Ct. App. Div. 2023) (first citing N.J.S.A. 2A:14-2(b); then N.J.S.A. 2A:14-2(a); *Doe v. The Estate of C.V.O.*, 303 A.3d 678 (N.J. Super. Ct. App. Div. 2023)).

[2]      On August 13, 2024, Plaintiff requested the Clerk of Court enter default against Defendant. (D.E. No. 23). On September 23, 2024, she filed a motion for the same. On October 18, 2024—after Defendant appeared and filed his own motion to set aside default—the Honorable Michael A. Hammer, U.S.M.J. vacated default. (D.E. No. 29).

in writing why her [c]omplaint should not be dismissed with prejudice, based on res judicata, collateral estoppel, and/or the entire controversy doctrine." (D.E. No. 39). Plaintiff responded accordingly. (D.E. No. 40).

Upon careful consideration of the parties' submissions, (*see* D.E. Nos. 1 , 31, 32, 36 – 38, 40 & 43–45), the Court held that Plaintiff's complaint did "not set forth sufficient facts to plausibly allege a non-barred claim against Defendant under the New Jersey Child Sexual Abuse Act and/or the New Jersey Child Victims Act." (D.E. No. 46). The Undersigned thus dismissed Plaintiff's complaint with leave to amend. (*Id*.).

On September 11, 2025, Plaintiff filed the Amended Complaint, and Defendant again moved to dismiss and for sanctions. (D.E. Nos. 52 & 53). Plaintiff opposed, (D.E. No. 58 ("Opp. Br.")), and Defendant filed a reply, (D.E. No. 62 ("Reply Br.")). The Court further permitted Plaintiff to file a sur-reply, (D.E. No. 68), which she did on December 9, 2025, (D.E. No. 69).[3] On December 16, 2025, Defendant filed a response. (D.E. No. 71).

## II.   LEGAL STANDARD

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). "[A] complaint attacked by a . . . motion to dismiss does not need detailed factual allegations." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). However, the plaintiff's "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

---

[3]   The parties also filed separate briefing in connection with Defendant's motion for sanctions. (D.E. Nos. 53-1, 59, 63, 70).

do." *Id.* (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). A court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Papasan*, 478 U.S. at 286. Instead, assuming the factual allegations in the complaint are true, those "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 560 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* This "plausibility standard" requires the complaint to allege "more than a sheer possibility that a defendant has acted unlawfully," but it "is not akin to a 'probability requirement.'" *Id.* (citing *Twombly*, 550 U.S. at 556). "Detailed factual allegations" are not required, but "more than an unadorned, the defendant-harmed-me accusation" must be pled; a complaint must include "factual enhancements" and not just conclusory statements or a recitation of the elements of a cause of action. *Id.* (citing *Twombly*, 550 U.S. at 555, 557).

Moreover, "[d]etermining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)).[4]

---

[4] In total, Defendant attached 21 individual exhibits to his Motion to Dismiss. (*See* D.E. Nos. 52-2–4). While the Court generally "may not consider matters extraneous to the pleadings" when deciding a Rule 12(b)(6) motion, *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997), an exception to this general rule provides that the Court may also consider "exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010); *see also Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006).

## III.    DISCUSSION

Defendant argues that Plaintiff's claims should be dismissed as barred by *res judicata* and the Entire Controversy Doctrine.   Furthermore, Defendant contends that, even if those doctrines do not bar Plaintiff's claims, the NJCVA does not revive the statute of limitations for her particular claim.   The Court addresses each argument in turn.

### A.        *Res Judicata* **and The Entire Controversy Doctrine**

***Res Judicata***.   Defendant first argues that Plaintiff's claims are barred by *res judicata*. Defendant contends that "[t]he Superior Court of New Jersey's docket in *Doe (Monroe) v. Sieczkowski, et al*., Docket No. MID-L-10246-91, reflects that the case was dismissed by order dated September 28, 1992, and subsequently marked 'Sett-Not Sched Trial' by a court-initiated Stipulation of Dismissal on July 6, 1993."   (Mov. Br. at 24 (citing Ex. 3 to D.E. No. 52-3)).   This, Defendant argues, amounts "to a final judgment on the merits for *res judicata* purposes."   (*Id*.).   In

---

Here, Defendant attached to his sworn declaration (i) a copy of Plaintiff's 1991 state court complaint, (D.E. No. 52-2 ("Exhibit A")); (ii) a copy of the summons from that same matter, (D.E. No. 52-2 ("Exhibit B")); (iii) correspondence between Defendant and his insurance company, indicating that the insurance company intended to assign Defendant and his mother counsel for the 1991 civil action, (D.E. No. 52-2 ("Exhibit C")); (iv) a copy of Defendant's criminal judgment, (D.E. No. 52-2 ("Exhibit D")); and (v) a copy of Defendant's expungement order, (D.E. No. 52-2 ("Exhibit E")).   The Court considers Exhibits A and B as matters incorporated by reference to Plaintiff's Amended Complaint; the Court further considers Exhibits D and E as matters of public record.   The Court does not consider Exhibit C, as it is a document extraneous to the Amended Complaint and does not appear to be a matter of public record.

Defendant further submitted thirteen separate exhibits related to his counsel's effort to determine the resolution of the 1991 civil action: (i) a copy of Plaintiff Amended Complaint in the instant matter, (D.E. No. 52-3 ("Exhibit 1")); (ii) a copy of the Superior Court of New Jersey's electronic case records listing for the 1991 civil action, (D.E. No. 52-3 ("Exhibit 2")); (iii) screen shots from the docket for that matter, (D.E. No. 52-3 ("Exhibit 3")); (iv) Defendant's records request and the Superior Court Clerk's Office's written response, (D.E. No. 52-3 ("Exhibit 4")); (v) an archive report, (D.E. No. 52-3 ("Exhibit 5")); (vi) a subpoena, (D.E. No. 52-3 ("Exhibit 6")); (vii) letter correspondence concerning this matter, (D.E. No. 52-3 ("Exhibit 7")); (viii) a public inquiry access guide for the New Jersey Courts, (D.E. No. 52-3 ("Exhibit 8")); (ix) a press release, (D.E. No. 52-3 ("Exhibit 10")); and (x) bill texts for predecessor bills to the NJCVA (D.E. No. 52-3 ("Exhibits 11–13")).   The Court considers Exhibits 1, 2, 3, 8, and 10 through 13 under the same standards articulated above.   The Court does not consider Exhibits 4, 5, 6, 7, or 9 pursuant to the same.

Finally, Defendant attached three exhibits to his attorney, Ms. Vladyka's, declaration.   (*See* D.E. No. 52-4). The Court considers none of these documents, as again they fall under none of the exceptions to the general rule that a court may not consider matters extraneous to the pleadings on a motion to dismiss.

opposition, Plaintiff contends that "[t]he Amended Complaint alleges the opposite of a final adjudication: Plaintiff brought a 1991 civil action but never obtained a judgment, never signed or received a settlement, and withdrew because her severe psychiatric crisis—unfolding in tandem with Defendant's criminal case—deprived her of a meaningful opportunity to litigate." (Opp. Br. at 6). "At bottom," Plaintiff argues, "the [*res judicata*] inquiry at this stage reduces to whether the prior disposition was with prejudice[,]" and "Plaintiff pleads the opposite." (*Id*. at 6–7). Furthermore, the docket Defendant points to "say[s] nothing about finality" or whether the Superior Court dismissed the matter with or without prejudice. (*Id*. at 7). Plaintiff thus argues that, "[o]n this record, any inference of a final merits adjudication is conjectural" and therefore insufficient to dismiss her Amended Complaint at this stage. (*Id*.). In reply, Defendant maintains that "[t]he September 28, 1992 dismissal order and the July 6, 1993 court-initiated stipulation of dismissal each constitute final, non-appealable orders under New Jersey state court procedural rules." (*Id*. at 11).

The *res judicata* defense "may be raised and adjudicated on a motion to dismiss and the court can take notice of all facts necessary for the decision." *Toscano v. Conn. Gen. Life Ins. Co.*, 288 F. App'x 36, 38 (3d Cir. 2008). *Res judicata*, also known as claim preclusion, bars "'repetitious suits involving the same cause of action' once 'a court of competent jurisdiction has entered a final judgment on the merits.'" *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 315 (2011) (quoting *Commissioner v. Sunnen,* 333 U.S. 591, 597 (1948)). It is founded on the general public policy that once a court has decided on a contested issue, litigation may not later be renewed in another court. *Heiser v. Woodruff*, 327 U.S. 726, 733 (1946); *see also Purter v. Heckler*, 771 F.2d 682, 690 (3d Cir. 1985). To successfully raise the defense of *res judicata*, the party asserting the defense must show that there has been a final judgment on the merits in a prior

suit involving the same parties or their privies and a subsequent suit based on the same causes of action. *United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 (3d Cir. 1984). The term "cause of action" does not necessarily rest on the specific legal theory invoked but turns on "the essential similarity of the underlying events giving rise to the various legal claims." *Davis v. U.S. Steel Supply*, 688 F.2d 166, 171 (3d Cir. 1982).

The parties here focus primarily on the first prong: whether they litigated the 1991 civil action to a final judgment on the merits. A court renders a judgment "on the merits" when it "addresses the fundamental legal issues and facts of the case." *Vithanalange v. Hunaity*, No. 22-6248, 2025 WL 1766213, at *3 (D.N.J. June 25, 2025). For that reason, "any dismissal ***with prejudice*** would be considered an adjudication on the merits." *Id*. (citing *Maiden v. N. Brunswick Twp. Sch. Dist.*, No. 19-18768, 2020 WL 3546809 at *4 (D.N.J. Jun. 30, 2020)) (emphasis added). On the other hand, when a court dismisses a case ***without prejudice***, "the matter is considered dismissed without getting to the merits of the case" and therefore *res judicata* does not bar a subsequent action. *Id*. (citing N.J. Court Rules R 4:37-1 (providing for dismissal without prejudice by leave of court at a plaintiff's request)); *see also Williams v. Litton Loan Servicing*, No. 16-5301, 2018 WL 6600097, at *10 (D.N.J. Dec. 17, 2018), *aff'd sub nom. Williams v. Litton Loan Servs.*, 788 F. App'x 819 (3d Cir. 2019). In other words, the issue before the Court is thus: if the Superior Court dismissed the 1991 civil action with prejudice, the instant action is barred by *res judicata*; if, however, the Superior Court instead dismissed that action without prejudice, it is not.

Plaintiff alleges that the "action was never adjudicated on the merits, never resulted in a settlement or release, and never produced any judgment with prejudice." (Am. Compl. ¶ 39). As described *supra*, for the purposes of a motion to dismiss, like this one, the Court accepts the factual allegations in the Amended Complaint as true and draws all inferences in the light most favorable

to Plaintiff.  *See Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008).  Moreover, "[w]hile affirmative defenses, such as *res judicata* and the entire controversy doctrine, could be proper grounds for a dismissal under Rule 12(b)(6), they may not afford the basis for a dismissal if they are not 'apparent on the face of the complaint.'"  *Kisby Lees Mech. LLC v. Pinnacle Insulation, Inc.*, No. 11-5093, 2012 WL 3133681, at \*4 (D.N.J. July 31, 2012) (quoting *Rycoline Prods., Inc. v. C & W Unlimited,* 109 F.3d 883, 886 (3d Cir. 1997).  Accordingly, while the Court takes judicial notice of the existence of the docket sheet and screenshots Defendant provided from the 1991 civil action, (*see generally* Exs. 2 & 3), it does not—because it may not—examine those documents for the truth of the matters asserted therein.  *See Kellner v. Amazon, Officers, Directors, & S'holders*, No. 22-01124, 2023 WL 6200031, at \*4 (D.N.J. Feb. 23, 2023) ("[W]hile this Court may consider previous filings and opinions in related court proceedings, it may not do so for the truth of the matter." (citing *Werner v. Werner*, 267 F.3d 288, 295 (3d Cir. 2001) ("Taking judicial notice of the truth of the contents of a filing from a related action could reach, and perhaps breach, the boundaries of proper judicial notice.")))).

But even if the Court *did* examine those documents for their truth, it is not at all obvious that they establish that the Superior Court dismissed the 1991 civil action with prejudice, such that *res judicata* applies.  As both parties agree, the "case disposition" is listed as "Sett-Not Sched Trial, Arbitr, Or Othr Cdr/Friend Hear Not Compl."  (*See* Ex. 2 at 16 (ECF Pagination)).  The docket further shows a "STPULTN DISMISL" entered on July 6, 1993.  (*Id*.).  The Court frankly cannot divine from any of that that this matter was dismissed with prejudice, particularly in view of Plaintiff's allegations to the contrary—made under penalty of perjury and entitled to the

9

presumption of truth at this stage.[5]  And even if the Court credited Defendant's assumption that the parties settled the matter, nothing in the record plausibly suggests to the Court that any such settlement occurred **with prejudice**.  *See, e.g.*, *Pet Gifts USA, LLC v. Imagine This Co.*, No. 14-03884, 2023 WL 7154120, at *2 (D.N.J. Aug. 30, 2023) ("Prior to trial, the matter settled, and on January 9, 2019, the parties submitted a Stipulation of Dismissal *without prejudice* as to the Defendants' counterclaim.  Because the Stipulation disposed of all parties' claims, the Court directed the Clerk to close the file."); *Litgo New Jersey, Inc. v. Mauriello*, No. 06-2891, 2009 WL 10690452, at *10 (D.N.J. Dec. 31, 2009), *amended and vacated in part on other grounds sub nom. Litgo New Jersey, Inc v. Mauriello*, No. 06-2891, 2010 WL 11570281 (D.N.J. Feb. 17, 2010) (discussing the application of preclusion doctrines to a matter previously settled without prejudice).[6]  Put simply: this Court will not neglect its responsibility to draw all reasonable inferences in Plaintiff's favor on this Motion to Dismiss.

Nevertheless, Defendant argues that, even assuming the 1991 civil action was dismissed without prejudice, "[a] litigant's failure to take timely corrective action can render a dismissal effectively final." (Reply Br. at 12).  But the case Defendant cites for this proposition, *Hoffman v. Nordic Naturals, Inc.*, involves an entirely different set of factual circumstances.  There, the District Court dismissed the plaintiff's complaint without prejudice and granted him 30 days' leave

---

[5]    Defendant also argues that "[p]ursuant to [New] Jersey Court Rule 4:37(b)(2), once an answer has been filed, a plaintiff cannot voluntarily dismiss her case **without a court order**." (*Id*. (emphasis added)).  This, Defendant reasons, means "that the Superior Court formally disposed of the 1991 case by entering the September 28, 2022 order, which carries full preclusive effect for purposes of *res judicata*." (*Id*. at 25).  Defendant obfuscates the rules.  Under Rule 4:37-1, if the court grants a plaintiff leave to voluntarily dismiss her action after a defendant has filed an answer, "[u]nless otherwise specified[,]" such dismissal is presumptively **without prejudice**.  And, in any event, Defendant makes his argument based on the current New Jersey Court Rules, and thereby appears to assume that those Rules have not changed since 1991.

[6]    Although these cases consider dismissals brought under Federal Rule of Civil Procedure 41, the New Jersey analogue (New Jersey Court Rule 4:37) functions much the same, as relevant to this analysis.  Discussed *supra*, however, neither party makes any argument as to whether the current version of the New Jersey Court Rules have been amended since the 1991 civil action in question here.

10

to amend his complaint.  When plaintiff failed to do so, he "elected to 'stand on his complaint'" and thereby converted the District Court's "dismissal into a final order." *Hoffman v. Nordic Nats., Inc.*, 837 F.3d 272 (3d Cir. 2016) (quoting *Borelli v. City of Reading*, 532 F.2d 950, 951–52 (3d Cir. 1976)).  Here, Plaintiff alleges that the Superior Court never resolved any dispositive motions—like a motion to dismiss.  (Am. Compl. ¶ 43).  Defendant does not seem to dispute this, and cites no cases for the proposition that a plaintiff who voluntarily dismisses her complaint without prejudice converts her voluntarily dismissal into one with prejudice by failing to file an amended complaint within a certain (and unspecified) period of time.  Nor has Defendant cited any case law describing how the NJCVA might impact that analysis.

Defendant also contends that "[o]nce the Superior Court dismissed Plaintiff's 1991 case and she never sought to reinstate it, or appeal it, or seek relief under Rule 4:50-1, the dismissal became final for preclusion purposes." (*Id*. at 12).  New Jersey Court Rule 4:50-1 provides the following:

> [T]he court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under [Rule] 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason justifying relief from the operation of the judgment or order.

"A motion under Rule 4:50-1 must be 'made within a reasonable time;' however, motions made under Rule 4:50-1(a), (b), or (c) must be made within one year of the judgment or order." *Diaz v. Bobadilla*, No. A-3944-17T1, 2019 WL 1513807, at *4 (N.J. Super. Ct. App. Div. Apr. 8, 2019).

Defendant's argument regarding New Jersey Court Rule 4:50-1, however, presupposes (i) that the underlying dismissal order was "final," and (ii) that the passage of the NJCVA and its application to Plaintiff's specific set of factual circumstances does not constitute a "reason justifying relief from the operation of the judgment or order[,]" which would permit a plaintiff to file a motion for relief greater than one year following an order or judgment. N.J. Ct. R. 4:50-1–2; *see also Diaz v. Bobadilla*, No. A-3944-17T1, 2019 WL 1513807, at *4 (N.J. Super. Ct. App. Div. Apr. 8, 2019) ("When deciding if a motion for relief under Rule 4:50-1 has been 'made within a reasonable time,' the court must consider 'the surrounding circumstances including the length of time that has passed and a due consideration for competing rights and interests which have come to exist.'" (first quoting *Friedman v. Monaco & Brown Corp.*, 258 N.J. Super. 539, 543 (N.J. Super. Ct. App. Div.1992); then citing *City of Newark v. (497) Block 1854*, 244 N.J. Super. 402 (N.J. Super. Ct. App. Div. 1990))). For reasons discussed *infra*, the Court does not see fit to make any such determination regarding the application of the NJCVA at this stage.

Finally, Defendant argues that Plaintiff "deliberately failed to disclose that she possessed her late mother's full litigation file from the 1991 action and that she had sought to obtain the Court's file from the Superior Court Clerk in Middlesex County in October 2021." (Mov. Br. at 7). Defendant does not contend that the litigation file contains any record that the civil matter was dismissed with prejudice, nor does he explain why Plaintiff's failure to disclose that she had sought to obtain the file supports dismissal at this juncture. (*See generally* Mov. Br.). In any event, the Court again notes that, in deciding a motion to dismiss pursuant to Rule 12(b)(6), a district court is "required to accept as true all factual allegations in the complaint and draw all inferences in the facts alleged in the light most favorable to the [plaintiff]." *Phillips v. County of Allegheny*, 515 F.3d 224, 228 (3d Cir. 2008). Furthermore, the Court generally "may not consider matters

12

extraneous to the pleadings" when deciding a Rule 12(b)(6) motion, or else risk converting the motion into one for summary judgment. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). To the extent Defendant seeks to dispute Plaintiff's factual allegations or urge this Court to look beyond the four corners of the Amended Complaint, the Court reminds Defendant that such arguments are not appropriate at this stage of the litigation. *See Cevdet Aksut Ogullari Koll. Sti v. Cavusoglu*, No. 14-3362, 2018 WL 585542, at *3 (D.N.J. Jan. 29, 2018), *aff'd sub nom. Cevdet Aksut Ve Ogullari Koll.Sti v. Cavusoglu*, 756 F. App'x 119 (3d Cir. 2018) ("The inferences that the Court *must* make from allegations in a complaint at the Rule 12 stage are wholly separate from the inferences a court makes based on evidentiary support *from the record* at the Rule 56 stage."); *Kim v. Dongbu Tour & Travel, Inc.*, No. 12-1136, 2012 WL 12903168, at *2 (D.N.J. Oct. 9, 2012) ("'[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.' For this reason, 'when a complaint adequately states a claim, it may not be dismissed based on a district court's assessment that the plaintiff will fail to find evidentiary support for his allegations or prove his claim to the satisfaction of the factfinder.'" (quoting *Twombly*, 550 U.S. at 546) (citation modified)). Moreover, the Hon. Michael A. Hammer, U.S.M.J. stayed discovery in this matter at Defendant's request (and with Plaintiff's consent), such that the factual record is not sufficiently developed for summary judgment motion practice. (*See* D.E. Nos. 73–77).

In short, despite Defendant's best efforts to argue the contrary, *res judicata* does not bar Plaintiff's allegations at this stage.

***The Entire Controversy Doctrine***. Defendant argues next that Plaintiff's claims are independently barred by the Entire Controversy Doctrine. The entire controversy doctrine "is New Jersey's specific, idiosyncratic application of traditional res judicata principles." *Rycoline*

13

*Prods., Inc.*, 109 F.3d at 886.  The equitable doctrine "requires adversaries to join all possible claims stemming from an event or series of events in one suit[,]" *Paramount Aviation Corp. v. Agusta*, 178 F.3d 132, 135 (3d Cir. 1999), and is "intended to be applied to prevent a party from voluntarily electing to hold back a related component of the controversy in the first proceeding by precluding it from being raised in a subsequent proceeding thereafter[,]" *Oltremare v. ESR Custom Rugs, Inc.*, 749 A.2d 862 (N.J. Super. Ct. App. Div. 2000).  At bottom, [t]he doctrine aims to "promote judicial efficiency, assure fairness to all parties with a material interest in an action, and encourage the conclusive determination of a legal controversy."  *Olds v. Donnelly*, 696 A.2d 633 (N.J. 1997) (citing *DiTrolio v. Antiles*, 662 A.2d 494 (N.J. 1995)).  For that reason, the doctrine "does not apply to claims that are unaccrued at the time of the underlying litigation[,]" *id.*, and "a court must consider whether the party against whom the doctrine is sought to be invoked has had a fair and reasonable opportunity to litigate that claim[,]" *Hillsborough Twp. Bd. of Educ. v. Faridy Thorne Frayta*, 728 A.2d 857 (citing *Hobart Bros. Co. v. Nat'l Union Fire Ins. Co.*, 806 A.2d 810, 817 (N.J. Super. Ct. App. Div. 2002)).

Here, Plaintiff has not engaged in the kind of mischief that the Entire Controversy Doctrine aims to prevent.  She has not withheld claims in an effort to snag two bites at the proverbial apple, nor has she sued a defendant previously excluded from the 1991 civil action.  Moreover, Defendant cites no cases for the proposition that the Entire Controversy Doctrine bars a plaintiff who voluntarily dismissed her claims—without prejudice—from bringing those claims again within an appropriate time period, even when that dismissal required leave of court pursuant to Rule 4:37-1(b).  *See Arena v. Borough of Jamesburg, Middlesex Cnty.*, 706 A.2d 790, 792 (N.J. Super. Ct. App. Div. 1998) ("[T]he entire controversy doctrine bars a subsequent action only when a prior action based on the same transactional facts has been tried to judgment or settled. . . . Therefore,

14

when a prior action has been dismissed without prejudice prior to trial, a plaintiff is not barred from filing a subsequent action based on the same transactional facts."). In fact, upon an independent review of the caselaw, the Court has identified authority to the contrary. *See Arena v. Borough of Jamesburg, Middlesex Cnty.*, 706 A.2d 790, 792 (N.J. Super. Ct. App. Div. 1998) ("The entire controversy doctrine does not affect a plaintiff's right to file a new action based on the same factual allegations as a prior action which has been dismissed without prejudice pursuant to *Rule* 4:37–1(a)."); *see also Assisted Living Assocs. of Moorestown, L.L.C. v. Moorestown Twp.*, 996 F. Supp. 409, 430 (D.N.J. 1998) ("It appears Judge Bookbinder [in *Arena*] dismissed ALA's claims pursuant to R. 4:37–1(a). Nonetheless, there would appear to be no significant distinction between the preclusive effect of a voluntary dismissal without prejudice by stipulation of an action before the service of an answer or a motion for summary judgment, and the preclusive effect of a voluntary dismissal without prejudice by order of the court.").

In short, Defendant's arguments brought under both traditional *res judicata* principles and the equitable Entire Controversy Doctrine suffer from the same, fatal issue: lack of finality. *See Rycoline Prods.*, 109 F.3d at 889 ("We have noted above the close relation between the Entire Controversy Doctrine and traditional res judicata principles. One of the prerequisites to the application of res judicata in New Jersey, as elsewhere, is the existence of a prior judgment that is final, valid, and on the merits.") (collecting cases). Defendant's Motion to Dismiss Plaintiff's claims on those grounds is therefore **DENIED**.

### B.     The NJCVA

Defendant next contends that, even if *res judicata* and the Entire Controversy Doctrine do not bar Plaintiff's claims, the NJCVA does not revive the statute of limitations in this instance because the law's "revival window targeted victims who could not connect their abuse to later

15

trauma until years had passed[,]" and Plaintiff always remembered her abuse. (Mov. Br. at 19–20). In support of his position, Defendant cites language from press releases published by the NJCVA's legislative sponsors. (*Id.*). The Legislature intended to exclude Plaintiff from the NJCVA, according to Defendant, because she "does not allege repressed memory," and "she fully recognized the connection between the alleged abuse and her psychiatric distress." (*Id.* at 20).

The Court finds this argument unsupported by the law. Defendant cites no authority to support his argument that the NJCVA excludes victims who have been unable to repress the memories of the abuses that they suffered, and the Court finds none upon its own review. Indeed, Defendant's interpretation of the law flatly contradicts the cases where New Jersey courts **have** permitted plaintiffs to bring claims newly-revived under the NJCVA despite not suffering from repressed memory. *See, e.g., C.P. v. Governing Body of Jehovah's Witnesses*, 304 A.3d 695 (N.J. Super. Ct. App. Div. 2023). This Court will not be the first to interpret the NJCVA in the sharply-limited manner Defendant suggests, and particularly not when such an interpretation would stand in contravention to New Jersey courts' application of the law thus far.

Defendant next argues that the Legislature did not intend for the law to revive cases already brought and previously dismissed on any grounds other than the statute of limitations, and that the NJCVA's "extension of limitations periods does not erase the preclusive effect of prior dismissals." (Mov. Br. at 22). Defendant cites two "predecessor bills" to the NJCVA, which both apparently contained the following provision: "'The bill would not revive any action previously dismissed on grounds other than the statute of limitations or revive any action that has been finally adjudicated.'" (Mov. Br. at 20–21). Defendant concedes, however, that this language "appeared in the Statements to those bills rather than the enacted text." (*Id.*).

In opposition, Plaintiff argues that "[t]he plain language of the [NJ]CVA contains no

16

exception excluding claims that were the subject of prior litigation[,]" and Defendant's argument "collapses entirely if, as Plaintiff alleges (and the public record corroborates), no adjudication occurred and no consideration changed hands." (Opp. Br. at 9). Defendant replies that "the Appellate Division squarely rejected the proposition that the [NJ]CVA allows a second opportunity to litigate claims that were previously filed and dismissed." (Reply Br. at 2). Defendant cites to *Y.G. v. Bd. of Educ. for Twp. of Teaneck*, No. A-3433-23, 2025 WL 2534928 (N.J. Super. Ct. App. Div. Sept. 4, 2025), *cert. denied*, 351 A.3d 624 (N.J. 2026*)* where the court "held that the CVA revival window did not apply because [the plaintiff's] earlier case had been adjudicated and dismissed." (Reply at 2).

Defendant breezes by a key detail from *Y.G.*: there, the court dismissed Plaintiff's claims brought before the enactment of the NJCVA **with prejudice**. As discussed extensively *supra*, at this early stage of the litigation, the Court declines to credit Defendant's assumption that the same is true of the 1991 civil action at issue here. To be sure, discovery may reveal that the 1991 civil action was fully adjudicated on the merits and resulted in a dismissal with prejudice. In that event, Defendant may certainly file a motion for summary judgment, as appropriate. At this early stage of the litigation, however, and for all the reasons articulated herein, the Court finds that Plaintiff has levied sufficient allegations against Defendant to plausibly allege a claim under the NJCVA that is not barred by either *res judicata* or the Entire Controversy Doctrine.[7]

### C.       Motion for Sanctions

Because this Court **DENIES** Defendant's motion to dismiss, (D.E. No. 52), Defendant's motion for sanctions, (D.E. No. 53), is likewise **DENIED** as moot, *without prejudice* to

---

[7]       As Defendant does not appear to move for dismissal based on the merits of Plaintiff's claims, (*see generally* Mov. Br.), the Court need not address those substantive allegations here.

17

Defendant's ability to re-raise his motion, as appropriate, and with leave of Court, at a later date.

### IV.    CONCLUSION

Defendant's Motions to Dismiss the Complaint and for Sanctions are **DENIED**.  An appropriate Order accompanies this Opinion.

*s/ Esther Salas*
**Esther Salas, U.S.D.J.**
